Scotty J. DEMMITH, Petitioner,

v.

WISCONSIN JUDICIAL CONFERENCE,
Respondent.

Supreme Court

*No. 91-0067-OA. Oral argument January 3, 1992.—Decided*
*March 11, 1992.*

(Also reported in 480 N.W.2d 502.)

650

651

For the petitioner their were briefs by *Lynn Adelman* and *Adelman, Adelman & Murray,* Milwaukee and oral argument by *Lynn Adelman.*

For the respondent there was a brief by *David J. Hanson, Raymond P. Taffora* and *Michael, Best & Friedrich,* Madison and oral argument by *Mr. Taffora.*

Amicus curiae brief was filed by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee for

American Civil Liberties Union of Wisconsin Foundation and Wisconsin Association of Criminal Defense Lawyers.

SHIRLEY S. ABRAHAMSON, J. This is an original action brought pursuant to sec. (Rule) 809.70, Stats. 1989-90, seeking a declaratory judgment that the Uniform Misdemeanor Bail Schedule adopted by the Wisconsin Judicial Conference on October 12, 1990, and adopted by supreme court order on October 31, 1990,[1] does not comply with sec. 969.065, Stats. 1989-90. On September 27, 1991, the Judicial Conference adopted the current Uniform Misdemeanor Bail Schedule, effective by supreme court order on October 29, 1991. For purposes of this action the Bail Schedules adopted in 1990 and 1991 are the same, and our declaration of rights governing the Bail Schedule adopted in 1990 applies to the Bail Schedule adopted in 1991 as well.

We declare that the Uniform Misdemeanor Bail Schedule does not comply with the requirement of sec. 969.065 that the guidelines for cash bail for persons accused of misdemeanors relate primarily to individuals. Section 969.065, Stats. 1989-90, provides in full as follows:

> The judicial conference shall develop guidelines for cash bail for persons accused of misdemeanors which the Supreme Court shall adopt by rule. The guide-

---

[1]The October 31, 1990, supreme court order adopting the bail schedule stated in full:

> Notwithstanding the requirement of s. 969.065 that "the guidelines shall relate primarily to individuals," the Wisconsin Judicial Conference developed the Uniform Misdemeanor Bail Schedule at its meeting on October 12, 1990. As required by s. 969.065, the court by order hereby adopts the Schedule developed by the Conference. The schedule shall remain in effect until further order of this court.

lines shall relate primarily to individuals. The guidelines may be revised from time to time under this section.

We conclude that the Judicial Conference must be given an opportunity to comply with sec. 969.065. We direct the Clerk of the Supreme Court to forward a copy of this opinion to the Executive Committee of the Wisconsin Judicial Conference so that the Judicial Conference may consider, at its annual conference in October, 1992, developing guidelines for cash bail for persons accused of misdemeanors which shall relate primarily to individuals as required by sec. 969.065. If the Judicial Conference develops and submits a revised Bail Schedule on or before November 27, 1992, and the court adopts that revised Bail Schedule by rule on or before December 31, 1992, the revised Bail Schedule shall replace the Bail Schedule the Judicial Conference developed on September 27, 1991, and the court adopted on October 29, 1991, and shall be in full force and effect until further order of this court. Because law enforcement officers across the state use the Bail Schedule every day, we further declare that in the interests of the sound administration of justice the Uniform Misdemeanor Bail Schedule adopted by the court on October 29, 1991, shall remain in full force and effect until midnight December 31, 1992, and shall thereafter be null and void, unless this court otherwise orders.

After we state the facts, we examine whether the Bail Schedule complies with sec. 969.065. We then examine whether sec. 969.065 withstands constitutional challenge under the separation of powers doctrine as an undue burden or substantial interference with judicial powers or as an invalid delegation of judicial power to law enforcement officers. We conclude with a discussion of the appropriate remedy.

## I.

The facts are stipulated. On December 6, 1990, Scotty J. Demmith was arrested in front of his home for possession of marijuana and operation of a motor vehicle after revocation of his license—two misdemeanors. At the time of his arrest, Demmith carried valid identification establishing his Wisconsin residency, had no outstanding bench warrants, and cooperated fully with police. Acting pursuant to the Uniform Misdemeanor Bail Schedule, the police officers conditioned Demmith's release on his deposit of cash bail in the amount of $100 for possession of marijuana and $500 for operating a vehicle after revocation. Unable to post the required cash bail, Demmith was confined in the Milwaukee County Jail until his court appearance.[2] At Demmith's initial appearance on December 10, 1990, the court commissioner released Demmith from custody without requiring any cash bail.

In 1981, the legislature adopted sec. 969.065, Stats. 1989–90, assigning to the Wisconsin Judicial Conference the task of developing guidelines for cash bail for persons accused of misdemeanors. The statute provides that the guidelines shall relate primarily to individuals and that the supreme court is to adopt the guidelines by rule. Section 969.065, Stats. 1989–90, provides in full:

> The judicial conference shall develop guidelines for cash bail for persons accused of misdemeanors which the Supreme Court shall adopt by rule. The guidelines shall relate primarily to individuals. The guidelines may be revised from time to time under this section.

---

[2]Demmith has not challenged the validity of his four-day jail confinement except with regard to the validity of the Bail Schedule.

The Wisconsin Judicial Conference consists of the justices of the Wisconsin Supreme Court, the judges of the Wisconsin Court of Appeals, the judges of the Wisconsin circuit courts, and the reserve judges of the State of Wisconsin. Wis. Sup. Ct. Rule 70.15(1) (1991).[3] This court created the Judicial Conference by rule in 1964 to improve the administration of justice in this state.[4]

The parties agree that the Wisconsin Judicial Conference developed the Uniform Misdemeanor Bail Schedule for the purpose of complying with sec. 969.065, Stats. 1989–90. On October 12, 1990, the Judicial Conference adopted the 11-page Uniform Misdemeanor Bail Schedule pursuant to which the law enforcement officer demanded $600 cash bail from Demmith. The Bail Schedule contains three columns on each page, with each line listing the regulatory or statutory section of a misdemeanor, a description of the offense, and the amount of cash bail. For instance, according to the Bail Schedule, bail for a person accused of dognapping, sec. 951.03, Stats. 1989–90, is $250.00; bail for a person accused of shoplifting, sec. 943.50(4)(a), Stats. 1989–90, is $200.00. The Bail Schedule also sets forth a cash bail for Class A, B, C, and other misdemeanors for which cash bail is not specifically listed in the Bail Schedule. The Bail Schedule states that bail in all cases shall be in accordance with the Bail Schedule.

Demmith argues that the Bail Schedule does not "relate primarily to individuals" as sec. 969.065 requires,

[3]Article I of the Bylaws of the Judicial Conference provides that three municipal court judges designated by the Wisconsin Municipal Judges Association are also members of the judicial conference.

[4]*In the Matter of the Promulgation of a Rule Creating a Judicial Conference of Wisconsin,* 22 Wis. 2d v (1964). See also Art. II, sec. 1(a) of the Bylaws of the Judicial Conference.

because bail is determined under the Bail Schedule solely according to the offense allegedly committed.

## II.

██ We first examine whether the Bail Schedule complies with sec. 969.065, Stats. 1989-90. Section 969.065 protects against unnecessary pretrial confinement by mandating the creation of a bail schedule that allows the release of an accused prior to an initial court appearance. Section 969.065, as adopted in 1981, expressly states that the Judicial Conference "shall develop guidelines" that "shall relate primarily to individuals." On its face, through the use of the word "shall," sec. 969.065 mandates the Judicial Conference to adopt guidelines and mandates that the guidelines relate primarily to individuals.[5]

The history of ch. 969, Stats. 1989-90, which relates to the administration of bail, demonstrates the legislature's increasing concern about individualizing bail and evidences the legislature's intent that before conviction a defendant may be released whenever feasible on his or her own recognizance; that bail be imposed when there is a reasonable basis to believe that bail is necessary to assure the accused's appearance in court to answer crim-

---

[5] "The general rule is that, when the word shall is used in a statute, it is presumed mandatory unless a different construction is necessary to carry out the clear intent of the legislature." *In Matter of E.B.*, 111 Wis. 2d 175, 185, 330 N.W.2d 584 (1983). Section 969.065 uses "shall" in three instances and "may" in one. "When the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow v. Milwaukee County Civil Serv. Comm'n*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978).

inal prosecution; and that cash bail be only in the amount found necessary to assure the appearance of the defendant.[6]

The legislature first provided for a bail schedule in 1969, as part of a major revision of the criminal procedure code (including ch. 969). Section 63, ch. 255, Laws of 1969. The 1969 law directed county judges to adopt a schedule of cash bail for all misdemeanors and required that the schedule contain "a list of offenses and the amount of cash bail applicable thereto." Section 969.06(1), Stats. 1969.[7] The Judicial Council's prefatory note to ch. 255 appearing in the 1969 session laws states that the law attempts to provide for the release of as many defendants as possible without the need for cash bail or a surety bond. The Judicial Council's note following sec. 969.06 appearing at ch. 255, sec. 63, in the 1969 session laws further states that sec. 969.06 was "designed to insure the right of a defendant to a prompt determination of bail when he cannot be taken before a judge immediately upon his arrest."

In 1977, with court reorganization and the transformation of county judges into circuit judges, the legislature amended sec. 969.06, substituting the Judicial Con-

---

[6]Section 969.01(1),(4), Stats. 1969; sec. 969.01(1),(4), Stats. 1989–90; sec. 969.06, Stats. 1969; sec. 969.065, Stats. 1981–82; art. I, sec. 8(2), Wis. Const.

[7]Section 969.06(1), Stats. 1969, enacted in 1969 Laws ch. 255, sec. 63, stated:

County judges having jurisdiction over misdemeanors shall by rule adopt a schedule of cash bail for all misdemeanors. The schedule shall contain a list of offenses and the amount of cash bail applicable thereto as the judges determine to be appropriate. If the schedule does not list all misdemeanors, it shall contain a general clause providing for a designated amount of bail for all misdemeanors not specifically listed in the schedule. The schedule of bail may be revised from time to time.

ference for the county judges as the entity to develop the bail schedule. Section 482, ch. 449, Laws of 1977. Section 969.06, as amended in 1977, provided:

> The judicial conference shall develop a schedule of cash bail for all misdemeanors which the supreme court shall adopt by rule. The schedule shall contain a list of offenses and the amount of cash bail applicable thereto as the judicial conference determines to be appropriate. If the schedule does not list all misdemeanors, it shall contain a general clause providing for a designated amount of bail for all misdemeanors not specifically listed in the schedule. The schedule of bail may be revised from time to time under this section.

In 1981, the bail provisions of art. I, sec. 8 of the Wisconsin Constitution were amended to focus the administration of bail on individual defendants. The new provisions provide in part: "All persons, before conviction, shall be eligible for release under reasonable conditions designed to assure their appearance in court, protect members of the community from serious bodily harm or prevent the intimidation of witnesses." Article I, sec. 8(2), Wis. Const. The constitutional provisions also permit the denial of bail to certain defendants accused of committing serious crimes to persons. Article I, sec. 8(3), Wis. Const.

In keeping with the constitutional amendment, the legislature again amended chapter 969. Section 969.01(4) providing that if bail is imposed, "it shall be only in the amount found necessary to assure the appearance of the defendant" was retained. The legislature amended the bail schedule provision, adopting the current sec. 969.065 requiring the bail schedule to relate primarily to

<br>

individuals. Section 12, ch. 183, Laws of 1981.[8]

In 1981, the legislature also amended other provisions of chapter 969 to comport with the constitutional emphasis on the individual in the administration of bail. For instance, prior to 1981, sec. 969.07 allowed law enforcement officers to take bail that had been "set for a particular offense." Section 969.07, Stats. 1979-80. In 1981, the legislature amended sec. 969.07 to allow law enforcement officers to take bail when bail had been "set for a particular defendant." Section 13, ch. 183, Laws of 1981.

Despite the legislature's emphasis on individualization in setting bail, the legislature continued to recognize the relevance of the alleged offense to the setting of bail. Section 969.01(4) lists the "[p]roper considerations in determining whether to release the defendant without bail [or] fixing a reasonable amount of bail . . .." Some of these considerations relate to the offense committed; others relate to the characteristics of the individual defendant.

The legislative history of the amendment to sec. 969.07 contained the following note, not published with the statute, stating that court-approved bail schedules may be used but a judge must consider the offense charged as well as the circumstances of the defendant:

> As amended, s. 969.07 allows a law enforcement officer to take bail when it has been set for a particular defendant. This does not preclude the continued

---

[8]Section 969.06 was repealed and sec. 969.065 was enacted "in response to language in the constitutional bail amendment which makes clear that conditions of release should reflect what is appropriate for the particular defendant." Shaun Haas, Laws Implementing the Constitutional Bail Amendment, Wisconsin Legislative Council Staff Memorandum 82-8, at 6 (1982) (contained in Stipulation of Facts, Appendix A).

use of a court-approved bail schedule for misdemeanor offenses but does require the judge to consider the circumstances of the defendant, as well as the offense charged, when setting bail.

The legislature also refused to pass a version of sec. 969.065 that stated: "The guidelines shall relate to individuals, not to offenses." The legislature's refusal to pass this version of sec. 969.065 and the note to sec. 969.07 suggest that consideration of the alleged offense as a criterion in the bail schedule is permissible.

The Bail Schedule developed by the Judicial Conference in 1990 requires cash bail from all defendants and sets the amount of cash bail required from all defendants solely according to the offense charged. The Bail Schedule thus seems to meet the standard expressed in sec. 969.06, the earlier version of sec. 969.065, which focused on the offense charged. The Bail Schedule does not meet the standard expressed in the current sec. 969.065 which includes the requirement that the guidelines relate primarily to individuals. Because the Uniform Misdemeanor Bail Schedule requires cash bail according to the offense allegedly committed and does not consider factors which are directly related to an individual's likelihood to appear in court (the very purpose of cash bail), we conclude that the Uniform Misdemeanor Bail Schedule fails to satisfy the requirement in sec. 969.065 that the bail guidelines "relate primarily to individuals."

Counsel for the Judicial Conference attempts to "harmonize" the current Bail Schedule with sec. 969.065 by relying on sec. 969.07. Section 969.07 permits a law enforcement officer to deny release on bail if "the defendant is not in a fit condition to care for his or her safety or would constitute, because of his or her physical condi-

tion, a danger to the safety of others." Counsel argues that the individualized determination in sec. 969.07 should be read into the Bail Schedule to satisfy the "individualized" requirement of sec. 969.065. Thus, contends counsel, considerations other than the nature of the offense are implied in the Bail Schedule.

We do not read sec. 969.07 as fulfilling the requirement in sec. 969.065 that the Bail Schedule relate primarily to individuals. Section 969.065 relates to the setting of bail for individuals and protects the accused from the imposition of bail that is not related primarily to his or her individual circumstances. Section 969.07 applies only after bail has been set for an individual and permits law enforcement officers to continue custody of the defendant if the defendant's present condition requires it. This consideration relates only to the defendant's current threat to the safety of others after bail has been set. Section 969.07 does not govern whether cash bail should be required at all and, if so, in what amount.

For the reasons set forth we conclude that the Uniform Misdemeanor Bail Schedule fails to comply with sec. 969.065.

## III.

We next examine whether sec. 969.065 withstands constitutional challenge under the separation of powers doctrine as an undue burden or substantial interference with judicial powers.[9] The separation of powers doctrine

---

[9]The rule oft stated in our cases is that statutes are presumed to be constitutional and the challenger, here the Judicial Conference, has the burden of proving the statute unconstitutional beyond a reasonable doubt. *State v. Holmes,* 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982).

is not expressly stated in the Wisconsin Constitution but is inferred from the provisions of the constitution setting forth the powers of the legislative, executive, and judicial branches.[10] *State v. Holmes,* 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982). The constitution confers on each branch certain powers upon which the other branches absolutely may not intrude. *In Matter of Complaint Against Grady,* 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984). The court has also held, however, that "it is neither possible nor practical to categorize all governmental action as exclusively legislative, executive or judicial." *Layton Sch. of Art & Design v. WERC,* 82 Wis. 2d 324, 347, 262 N.W.2d 218 (1978). The separation of powers doctrine does not require a strict, absolute division of powers but instead envisions a system of separate branches sharing certain powers. *Holmes,* 106 Wis. 2d at 43. In areas of shared power, one branch may not exercise power in a manner that will unduly burden or substantially interfere with another branch's essential role and powers. *Grady,* 118 Wis. 2d at 775–76 (citing *Holmes,* 106 Wis. 2d at 68).

■

The parties agree, and the court concurs, that the bail provisions of art. I, sec. 8, Wis. Const., envision the legislature and judiciary exercising shared power over bail.

■

The legislature possesses the power to regulate the administration of bail under its power to promote the public welfare, *In re Cannon,* 206 Wis. 374, 381, 397, 240 N.W. 441 (1932), and to effectuate the public policy of maintaining a fair judicial system and public confidence

---

[10]Article IV, sec. 1, Wis. Const. (legislative); Art. V, sec. 1, Wis. Const. (executive); Art. VII, secs. 2, 3, 4, Wis. Const. (judicial).

in that system, *Holmes,* 106 Wis. 2d at 46. The legislature has long regulated bail. As early as 1838, the Laws of the Territory of Wisconsin included legislation delineating the circumstances under which a magistrate could release a prisoner on bail and the procedure for doing so.[11]

The usual statement of the powers of the judiciary is that the judiciary determines the conditions of release of an accused in a particular case. *Accord Application of Floyd,* 413 F. Supp. 574, 576 (D. Nev. 1976) (citing *Berkowitz v. United States,* 90 F.2d 881, 883 (8th Cir. 1937)); *Terry v. Gassett,* 740 P.2d 141, 145 (Okla. 1987); *Trevathan v. Mutual Life Ins. Co. of New York,* 113 P.2d 621, 624 (Or. 1941).[12]

Because bail is an area of shared powers, the legislature may set forth standards for bail as long as the legislature does not infringe on the judiciary's power.

Counsel for the Judicial Conference asserts that, to preserve sec. 969.065 and find it constitutional, the court must interpret it as providing directory, not mandatory, guidance to the Judicial Conference.[13] To support its position, counsel relies on art. I, sec. 8(3), Wis. Const., which provides that the legislature may authorize, "but may not require," circuit courts to deny release to certain persons accused of committing felonies involving

---

[11]An Act to Provide for the Arrest and Examination of Offenders, Commitment for Trial and Taking Bail, 1838 Laws of the Territory of Wisconsin, at 369, secs. 4, 17, 18. See also 1848 Revised Statutes of Wisconsin, ch. 145, secs. 4, 17, 18.

[12]See also *infra* note 19 and accompanying text.

[13]The court must interpret a statute, if at all possible, in a manner that will preserve the statute as a constitutional enactment. *Browne v. Milwaukee Bd. of Sch. Directors,* 83 Wis. 2d 316, 332, 265 N.W.2d 559 (1978) (citations omitted).

serious bodily harm.[14] Counsel asserts that the constitution permits the legislature to express itself as a matter of public policy on the question of bail but does not permit the legislature to require the judiciary to follow the legislative mandate. In other words, counsel maintains that the constitutional provision permits only directory but not mandatory guidance by the legislature to the judiciary and that sec. 969.065 thus violates the constitutional provision.

Counsel misreads art. I, sec. 8(3). This section does not prohibit the legislature from compelling the courts to act in a prescribed manner with respect to the administration of bail. Rather sec. 8(3) permits the legislature to authorize the courts to deny release of certain accuseds despite art. I, sec. 8(2) which makes all persons eligible for release under reasonable conditions.[15]

---

[14]Article I, sec. 8(3) states:

The legislature may by law authorize, but may not require, circuit courts to deny release for a period not to exceed 10 days prior to the hearing required under this subsection to a person who is accused of committing a murder punishable by life imprisonment or a sexual assault punishable by a maximum imprisonment of 20 years, or who is accused of committing or attempting to commit a felony involving serious bodily harm to another or the threat of serious bodily harm to another and who has a previous conviction for committing or attempting to commit felony involving serious bodily harm to another or the threat of serious bodily harm to another. The legislature may authorize by law, but may not require, circuit courts to continue to deny release to those accused persons for an additional period not to exceed 60 days following the hearing required under this subsection . . . .. Any law enacted under this subsection shall be specific, limited and reasonable. . . .

[15]The 1981 amendment to art. I, sec. 8(3) addressed

the concern that under the present constitutional provision which requires bail to be set for all offenders, persons who can make bail, yet may constitute a serious danger to other persons, are eligible for release prior to trial. Because judges must set bail, pre-trial detention

The Judicial Conference's brief seems to contend that by directing the Judicial Conference in sec. 969.065 to establish a Bail Schedule which relates primarily to individuals, the legislature unduly burdens or substantially interferes with the judiciary's power to determine when bail is appropriate and in what amount. But counsel for the Judicial Conference does not explain how sec. 969.065 constitutes an undue burden on or a substantial interference with the judiciary. The statutory requirement that the guidelines shall relate primarily to individuals sets a standard of individualization that is inherent in the concept of bail. The statutory requirement is in general terms and accords the Judicial Conference wide discretion in complying with the statutory standard.

Counsel for the Judicial Conference does not show that the Judicial Conference is unable to develop guidelines that comply with both the constitutional doctrine of separation of powers and the statutory requirement of individualization. Demmith and amicus curiae American Civil Liberties Union of Wisconsin Foundation and Wisconsin Association of Criminal Defense Lawyers contend that the Bail Schedule can easily be revised to relate primarily to individuals. They point with approval

is possible only if a judge sets bail in an amount that is unattainable by the accused. In so doing, a judge is setting bail at an amount which is unrelated to assuring appearance at trial and, therefore, contrary to the proscription against excessive bail in both the Federal and State Constitutions.

The [proposed amendment] solves this current dilemma by . . . permit[ting] the Legislature by law to authorize courts to deny release for a limited period of time to persons accused of crimes involving serious physical harm or crimes involving the threat of serious physical harm to another.

Shaun Haas, Legislation Relating to Revising the Constitutional Right to Bail, Wisconsin Legislative Council Report No. 32 to the 1979 Legislature, at 4–5 (1980).

to a preamble to the Bail Schedule proposed by the Uniform Bond and Forms Committee of the Criminal Traffic Section of the Judicial Conference and by the Executive Committee of the Judicial Conference but tabled at the Judicial Conference meeting on October 12, 1990.

The proposed preamble permits law enforcement officers to release certain accuseds without cash bail if certain standards are met. The proposed preamble individualizes the decision to require bail by setting forth standards that either are objectively verifiable or are substantially the same standards as law enforcement officers apply in other areas related to bail which require officers to be able to point to specific and articulable facts.

Under the proposed preamble a person arrested for a misdemeanor may be released from custody without cash bail if the person has a Wisconsin driver's license or can establish Wisconsin residency, an objectively verifiable standard, unless (1) further detention appears necessary to carry out legitimate investigative actions in accordance with law enforcement agency policies,[16] (2) the person appears to represent a danger of harm to himself or herself, another person or property,[17] or (3) the person had previously failed to appear or has an outstanding

---

[16]See sec. 968.085(2)(f), Stats. 1989–90, which sets forth this standard for law enforcement officers in deciding whether to issue citations for misdemeanors without requiring bail. Section 968.085 appears in the margin at note 20.

[17]See sec. 968.085(2)(c), Stats. 1989–90, which sets forth this standard for law enforcement officers in deciding whether to issue citations for misdemeanors without requiring bail. Section 968.085 appears in the margin at note 20.

See also sec. 969.07 adopting this standard to guide a law enforcement officer in refusing to release a defendant for whom bail has been set. Section 969.07 appears in the margin at note 21.

warrant, an objectively verifiable standard.[18]

The proposed preamble does not create individualized determinations concerning the amount of bail once the law enforcement officer determines that cash bail is required. The Bail Schedule sets the amount of cash bail for each offense alleged. The individualized component of the proposed preamble relates only to conditions under which a law enforcement officer should release the accused without cash bail.

Demmith and amicus curiae do not assert that the proposed Bail Schedule's lack of individualization in setting the amount of bail violates sec. 969.065. According to Demmith and amicus curiae, the proposed preamble to the Bail Schedule provides standards primarily related to the individual by allowing release without cash bail and this individualization is adequate to satisfy sec. 969.065. Apparently Demmith and amicus curiae have

---

[18]The preamble to the Misdemeanor Bail Schedule Guidelines proposed by the Uniform Bonds and Forms Committee, contained in Stipulation of Facts, Appendix K, states:

1. All persons arrested for a misdemeanor shall be released from custody without a cash bond if they have a valid Wisconsin driver's license or can establish Wisconsin residency by means of reliable identification, unless:

 a. Further detention appears necessary to carry out legitimate investigative action in accordance with law enforcement agency policies.

 b. The accused appears to represent a danger of harm to himself or herself, another person or property.

 c. The accused has previously failed to appear or has an outstanding warrant.

2. All persons detained solely for a misdemeanor shall be released upon compliance with the Misdemeanor Bail Schedule.

3. These guidelines for release do not supersede specific statutorily mandated detention.

concluded that the legislature intended to establish an easily administered system for release before an accused is brought to a judicial officer and that the proposed preamble along with the schedule setting the amount of bail comport with sec. 969.065 by considering both the offense and the person.

Under the proposed preamble to the Bail Schedule, the arresting officer could have released Demmith without bail because Demmith possessed valid identification establishing Wisconsin residency and did not fit within any of the exceptions. Under the existing Bail Schedule, Demmith went to jail because he did not have $600 in cash and was unfortunate enough to have been arrested on a weekend when no judge or court commissioner was available to release him immediately without cash bail.

Counsel for the Judicial Conference does not show that sec. 969.065 constitutes an undue burden on or a substantial interference with the courts. Rather than burdening or interfering with the functioning of the courts, the statute aids the judiciary's administration of justice by creating a mechanism controlled by the judiciary for providing release without bail and appropriate cash bail when judges are unavailable personally to determine the conditions of release.

## IV.

We now examine whether sec. 969.065 withstands constitutional challenge under the separation of powers doctrine as an invalid delegation of judicial power to law enforcement officers. Counsel for the Judicial Conference claims that the requirement in sec. 969.065 that the bail guidelines relate primarily to individuals "would place the determination of misdemeanor bail *prior to the*

*initial appearance* into the hands of nonjudicial officers without sufficient judicial oversight." (Brief of Judicial Conference at 9.) Counsel implies that any and all individualized schedules would constitute an invalid delegation of power to law enforcement officers. The only support counsel offers for this position is the generally stated rule that the judiciary determines bail; that law enforcement officers accept or take bail once it has been set; and that nonjudicial officers such as law enforcement officers may determine bail only if permitted by statute.[19]

We are not persuaded by counsel's unsupported assertions about unlawful delegation of power. The Bail Schedule constitutes the judiciary's setting of bail in advance of an initial appearance and permits law enforcement officers to take bail in accordance with the bail already set by the judiciary. In addition, counsel concedes that law enforcement officers have broad discretion under the statutes, and counsel does not challenge these statutes. Law enforcement officers may issue a citation to a person whom they believe committed a misdemeanor. If a citation is issued, the person is released without cash bail. Section 968.085, Stats. 1989-90.[20] Law enforcement officers may also refuse, in

---

[19]*Kahn v. McCormack,* 99 Wis. 2d 382, 388, 299 N.W.2d 279 (Ct. App. 1980) ("it is within the province of the legislature's police power to regulate who shall determine bail") (dicta); 63 O.A.G. 241, 243 (1974); 75 O.A.G. 209, 211 (1986); *Trevathan v. Mutual Life Ins. Co. of New York,* 113 P.2d 621, 624 (Or. 1941); *State v. Sureties of Krohne,* 34 P. 3 (Wyo. 1893); 8 C.J.S. *Bail* sec. 39, at 56, sec. 50, at 64.

[20]Section 968.085 states:

(1) Nature. A citation under this section is a directive, issued by a law enforcement officer, that a person appear in court and answer criminal charges. . . .

the interests of public safety, to accept bail set by a judicial officer. Section 969.07, Stats. 1989-90.[21]

> **(2)** Authority to issue; effect. A law enforcement officer may issue a citation to any person whom he or she has reasonable grounds to believe has committed a misdemeanor. A citation may be issued in the field or at the headquarters or precinct of the officer instead of or subsequent to a lawful arrest. If a citation is issued, the person cited shall be released on his or her own recognizance. In determining whether to issue a citation, the law enforcement officer may consider whether:
>
> (a) The accused has given proper identification.
>
> (b) The accused is willing to sign the citation.
>
> (c) The accused appears to represent a danger of harm to himself or herself, another person or property.
>
> (d) The accused can show sufficient evidence of ties to the community.
>
> (e) The accused has previously failed to appear or failed to respond to a citation.
>
> (f) Arrest or further detention appears necessary to carry out legitimate investigative action in accordance with law enforcement agency policies.

Other states have adopted citation release for criminal offenses instead of bail schedules. For a discussion of other state's practices relating to pretrial release, see Letter from Pretrial Services Resource Center to Wisconsin State Court Administrator, July 19, 1990 (contained in Stipulation of Facts, Appendix C).

The American Bar Association's *Standards for Criminal Justice* calls for the mandatory issuance of citations to "the maximum extent consistent with the effective enforcement of the law." ABA, *Standards for Criminal Justice,* Standard 10-2.1 (1988). The ABA Standards oppose money bail schedules fixed solely according to the nature of the charge because they "inevitably involve some element of wealth discrimination." ABA, *Standards for Criminal Justice,* Commentary to Standard 10-2.2(c) (1988).

[21]Section 969.07 provides:

> This section does not require the release of a defendant from custody when an officer is of the opinion that the defendant is not in a fit condition to care for his or her own safety or would constitute,

We conclude that by merely requiring the Judicial Conference to adopt bail guidelines relating primarily to individuals, the legislature has not unlawfully delegated judicial powers to law enforcement officers. The legislature has exercised its authority to promote the public welfare and the maintenance of a fair judicial system in which the public has confidence, while respecting the final authority of the court to determine the amount of bail in specific cases. We must remember the advice of our predecessors sixty years ago, before the modern expansion of the administrative state: "The co-ordinate branches of the government . . . should not abdicate or permit others to infringe upon such powers as are exclusively committed to them by the constitution. As to the exercise of those powers, however, which are not exclusively committed to them, there should be generous co-operation as will tend to keep the law responsive to the needs of society." *Rules of Court Case,* 204 Wis. 501, 514, 236 N.W. 717 (1931).

For the reasons set forth we conclude that sec. 969.065 does not constitute an unlawful delegation of powers to law enforcement officers.

## V.

The parties disagree about the remedy should we hold, as we do, that sec. 969.065 is constitutional and

---

because of his or her physical condition, a danger to the safety of others.

For an historical discussion of the powers of law enforcement officers over bail, see Hermine Herta Meyer, *Constitutionality of Pretrial Detention,* 60 Geo. L.J. 1139, 1154–56 (1972); Caleb Foote, *The Coming Constitutional Crisis in Bail: I,* 113 U. Pa. L. Rev. 959, 973 (1965).

that the Uniform Misdemeanor Bail Schedule is invalid because it conflicts with sec. 969.065. Demmith requests that we order the use of the preamble proposed by the Uniform Bonds and Forms Committee and the Executive Committee of the Judicial Conference but ultimately tabled by the Judicial Conference. Counsel for the Judicial Conference asks that the court remand the present Bail Schedule to the Judicial Conference for reconsideration.

Section 969.065, as we have stated before, directs the Judicial Conference to develop guidelines which the supreme court shall adopt by rule. We conclude that the Judicial Conference must be given an opportunity to comply with sec. 969.065. We direct the Clerk of the Supreme Court to forward a copy of this opinion to the Executive Committee of the Wisconsin Judicial Conference so that the Judicial Conference may consider, at its annual conference in October, 1992, developing guidelines for cash bail for persons accused of misdemeanors which shall relate primarily to individuals as required by sec. 969.065. If the Judicial Conference develops and submits a revised Bail Schedule on or before November 27, 1992, and the court adopts that revised Bail Schedule by rule on or before December 31, 1992, the revised Bail Schedule shall replace the Bail Schedule the Judicial Conference developed on September 27, 1991, and the court adopted on October 29, 1991, and shall be in full force and effect until further order of this court. Because law enforcement officers across the state use the Bail Schedule every day, we further declare that in the interests of the sound administration of justice the Uniform Misdemeanor Bail Schedule adopted by the court on October 29, 1991, shall remain in full force and effect

673

until midnight December 31, 1992, and shall thereafter be null and void, unless this court otherwise orders.

*By the Court.*—Rights Declared.