CH2M HILL, INC., a Florida Corporation, Formerly
Known As CH2M Hill Central, Inc., an Oregon
Corporation, Plaintiff-Respondent,

v.

BLACK & VEATCH, a Missouri General Partnership,
Comprised of Individual Partners J.E. Abbott, et al,,
Defendant-Appellant. †

Court of Appeals

*No. 95–2619. Submitted on briefs September 3,
1996.—Decided November 12, 1996.*

(Also reported in 557 N.W.2d 829.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Edward A. Hannan, M. Susan Maloney* and *Jane F. Carrig* of *Godfrey, Braun & Hayes* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Robert J. Smith* and *Hugh N. Anderson* of *Wickwire Gavin, P.C.* of Madison.

Before Wedemeyer, P.J., Fine and Curley, JJ.

WEDEMEYER, P.J.   Black & Veatch, a Missouri general partnership, ("B&V") appeals from an order denying its motion to dismiss a complaint filed against it by CH2M Hill ("CH2M"). B&V claims that the trial court erred as a matter of law when it ruled that CH2M obtained personal jurisdiction over it pursuant to § 801.11(6), STATS. Because under the calls of the stat-

ute CH2M properly obtained personal jurisdiction over B&V, we affirm.

## I.  BACKGROUND

The facts central to a resolution of this appeal are not in dispute. CH2M, the prime design consultant to the Milwaukee Metropolitan Sewerage District's effort to effectuate a water pollution abatement program, sued B&V alleging various theories of negligence, breach of contract, warranty liability, and a claim for indemnification for additional costs incurred in the performance of its work on a portion of the total project. After years of unsuccessfully negotiating a settlement, this action was filed on February 2, 1995. At the time, CH2M, by its legal counsel, knew that B&V consisted of at least 130 general partners, but did not know the identities or the locations of the individual partners. Thus, CH2M only named the partnership itself as defendant when the suit was filed, pursuant to § 807.12(3), STATS.[1]

Prior to filing suit, CH2M's counsel attempted to convince B&V's counsel to accept service on behalf of the partnership, but was told that authority was not given to legal counsel to do so. After the action was filed, CH2M's counsel made two further attempts between February 2, and February 20, to reach B&V's

---

[1] Section 807.12, STATS., provides in pertinent part:

**Suing by fictitious name or as unknown; partners' names unknown.**

. . . .

(3)  In an action against a partnership, if the names of the partners are unknown to the plaintiff, all proceedings may be in the partnership name until the names of the partners are ascertained, whereupon the process, pleadings and all proceedings shall be amended by order directing the insertion of such names.

counsel to determine if he had obtained authority to accept service. The attempts, however, were unsuccessful because B&V's counsel was not in Wisconsin. On February 20, CH2M's counsel communicated with B&V's in-house counsel again seeking consent to accept service. On February 28, the request was refused because of insurance indemnification reasons. Nevertheless, efforts by CH2M continued through March 15, to obtain consent to accept service.

In the meantime, on March 9, CH2M sent to B&V its first set of interrogatories requesting the names and addresses of B&V's general partners. Prior to B&V's response, CH2M advised B&V's in-house counsel that it had acquired a list of thirty-three of the partners and was arranging for immediate service of the summons and complaint on those partners. CH2M obtained service on twenty-eight of the thirty-three partners, prior to April 3, 1995, which was the sixty-day service expiration date. Section § 801.02(1), STATS.

On April 14, B&V responded to CH2M's interrogatory request for the names of all the partners. There were 160 partners. On May 3, 1995, after CH2M obtained all the names of the partners, it moved, pursuant to § 807.12(3), STATS., for an order directing insertion of the names of the partners into the pleadings. The trial court granted the motion June 14, 1995.

On July 15, 1995, B&V moved to dismiss CH2M's complaint. This motion was denied. This court, by order dated November 7, 1995, granted B&V's petition for leave to appeal.

## II. DISCUSSION

The basis for B&V's claim of trial court error involves the interpretation of a statute in the context of undisputed facts. Both parties ask us to construe and

apply § 801.11(6), STATS., to reach a different result. Our review, therefore, is of an independent, nondeferential nature. *See Bitters v. Milcut, Inc.*, 117 Wis. 2d 48, 49, 343 N.W.2d 418, 419 (Ct. App. 1983).

This appeal presents an issue of first impression in Wisconsin general partnership law: whether service on some of the partners in a general partnership composed of a large number of general partners is sufficient to properly commence a civil action against the partnership that will be binding on the partnership assets and the partners served.

The focus of our review involves the interpretation and construction of § 801.11(6), STATS., which provides:

> **(6)** PARTNERS AND PARTNERSHIPS. A summons shall be served individually upon each general partner known to the plaintiff by service in any manner prescribed in sub. (1), (2) or (5) where the claim sued upon arises out of or relates to partnership activities within this state sufficient to subject a defendant to personal jurisdiction under s. 801.05 (2) to (10). A judgment rendered under such circumstances is a binding adjudication individually against each partner so served and is a binding adjudication against the partnership as to its assets anywhere.

B&V asserts that CH2M did not "serve those partners known to it, and in the exercise of due diligence, those partners who could have been known," within sixty days of filing its complaint as required by § 801.11(6), STATS. It argues that by failing to effect proper service, CH2M did not properly commence this action under § 801.02(1), STATS.,[2] thereby creating a jurisdictional defect which foreclosed personal jurisdic-

---

[2] Section 801.02(1), STATS., provides in pertinent part:

tion over B&V and all of its partners. Thus, B&V argues, the action must be dismissed. Stated otherwise, B&V contends that unless CH2M obtained service upon every known general partner, there is a fundamental defect in the commencement of the action preventing the court from having jurisdiction over any of the general partners—served or unserved.

B&V reaches its conclusion through the following thought process. First, § 801.11(6), STATS., ought to be construed in a manner to avoid inconsistency and conflict so as to give effect to every part, *Associated Hospital Service Inc. v. City of Milwaukee*, 13 Wis. 2d 447, 463, 109 N.W.2d 271, 279 (1961), and to prevent superfluity. *State v. Wisconsin Tel. Co.*, 91 Wis. 2d 702, 714, 284 N.W.2d 41, 46 (1979). Next, B&V posits that the first sentence of the statute "[a] summons shall be served individually upon each general partner known to the plaintiff" is a condition precedent to triggering the second sentence: "A judgment rendered under such circumstances is a binding adjudication . . . against each partner so served." Thus, only when all general partners known to the plaintiff have been served will the second sentence take effect. Only this type of reading, proffers B&V, gives full effect to each part of the statute.

As additional support for its argument, B&V asserts that the presence of the verb "shall" renders the first sentence peremptory and mandatory, thereby making service on all of the known partners a necessity for personal jurisdiction. Finally, B&V claims that the

**Commencement of Action.** (1)  A civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 60 days after filing.

placing of the past participle "known" in the first sentence "denotes an objective standard which mandates due diligence under the circumstances to discover the identities and locations of those who, with reasonable diligence could be discovered." *Wold v. State*, 57 Wis. 2d 344, 350, 204 N.W.2d 482, 487 (1973). In this respect, B&V points to four reasons why objectively CH2M did not exercise due diligence: (1) CH2M failed to request the identity of the B&V partners prior to filing its summons and complaint; (2) CH2M failed to schedule a pre-action deposition to discover the partners' identity; (3) CH2M failed to take immediate action to conduct discovery depositions upon filing of the action; and (4) CH2M failed to request the trial court to shorten its thirty day response time to the interrogatories CH2M did serve. We shall address each part of B&V's construct.

The trial court, in denying B&V's motion to dismiss, concluded that § 801.11(6), STATS., permitted personal jurisdiction over served partners when fewer than all known partners were served. To support its decision, the trial court also concluded that there was no statutory authority for B&V's claim that CH2M had to exercise due diligence in ascertaining the identity of the general partners. Alternatively, the trial court reasoned that even if such a requirement should be read into the statute, CH2M had complied.

*A. General construction of § 801.11(6), STATS.*

■■■■

The key element in B&V's claim of trial court error is its assertion that the presence of the verb "shall" renders the first sentence of § 801.11(6), STATS., mandatory. Whether a statute is mandatory or directory is a matter of statutory construction which is a

question of law we decide independently. *F.T. v. State*, 150 Wis. 2d 216, 221, 441 N.W.2d 322, 324 (Ct. App. 1989). In addressing this issue, we begin with the rule of construction that "[s]tatutes relating to the same subject matter may be considered in construing a statutory provision." *Chomicki v. Wittekind*, 128 Wis. 2d 188, 193, 381 N.W.2d 561, 563 (Ct. App. 1985).

In *Karow v. Milwaukee County Civil Service Commission*, 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978),[3] our supreme court addressed the issue of whether a statute's use of the word "shall" should be given a mandatory versus a directory interpretation in cases where the statute contains a time limit (i.e. "time cases"). In *Demmith v. Wisconsin Judicial Conference*,

---

[3] In *Karow v. Milwaukee County Civil Service Commission*, 82 Wis. 2d 565, 263 N.W.2d 214 (1978), our supreme court set forth factors to be considered in "time cases." In determining whether legislation was intended to be mandatory or directory, it listed not only the omission of a prohibition or a penalty, but also "the consequences resulting from one construction or the other, the nature of the statute, 'the evil to be remedied, and the general object sought to be accomplished by the legislature.' " *Id.*, 82 Wis. 2d at 572, 263 N.W.2d at 217 (citations omitted). It cited language of an earlier decision that "[W]here there is no substantial reason why the thing to be done might not as well be done after the time prescribed as before—no presumption that by allowing it to be so done, it may work an injury or wrong—nothing in the act itself, or in other acts relating to the same subject matter, indicating that the legislature did not intend that it should rather be done, after the time prescribed, than not to be at all; there the courts assume that the intent was, that if not done within the time prescribed, it might be done afterwards." *Id.*, 82 Wis. 2d at 572 n.7, 263 N.W.2d at 217 n.7 (citing *State ex rel. Cothren v. Lean*, 9 Wis. 254 [*279], 266 [*292] (1859)). Thus, even in "time cases" a procrustean standard was not always adhered to if context dictated otherwise.

166 Wis. 2d 649, 480 N.W.2d 502 (1992), however, our supreme court did not apply *Karow*'s four-factor test to determine if the statute was mandatory or directory when the statute did not contain a time limit (i.e. "non-time" case). Instead, the supreme court declared:

> "The general rule is that, when the word shall is used in a statute, it is presumed mandatory unless a different construction is necessary to carry out the clear intent of the legislature." . . . "When the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings."

*Id.*, 166 Wis. 2d at 657 n.5, 480 N.W.2d at 506 n.5 (1992) (citations omitted).

An examination of § 801.11, STATS., and its seven subsections reveals that in subsections (4), (5) and (7), relating to the service of process on defendants other than natural persons, the word "may" is used as the operative verb. Thus, the argument naturally flows that the use of "shall" in subsection (6) relating to partners and partnerships is mandatory from which no deviation ought be countenanced. To impose such a requirement, however, would introduce an element of rigidity which is not warranted when the very purpose for which statutory interpretive rules exist is to glean legislative intent. To plumb the meaning of a statutory subsection our considerations ought not leave "context" and "common sense" on the courthouse steps. *State v. Clausen*, 105 Wis. 2d 231, 246, 313 N.W.2d 819, 826 (1982). Instead, we must not only examine the statute as a whole, but also in reference to other statutes dealing with the same general subject matter to discern the

379

entire legislative scheme. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992).

Undoubtedly, § 801.11, STATS., relates to the general subject matter of service of process on seven different types of defendants. We must, however, be mindful that the status of certain types of defendants are parts of discrete legislative schemes. Thus, we cannot ignore the provisions of the Uniform Partnership Act adopted by Wisconsin in Chapter 178, and the impact its provisions logically might have on personal jurisdiction questions.

B&V argues that to read the statute as interpreted by the trial court would implicate some due process concerns because the plain purpose of the subsection is to put proposed defendants on notice of a pending action and thus avoid prejudice. Laudatory as this concern may be, our legislature has already affected this aspect of partnership law in several significant respects: The Uniform Partnership Act declares that the partnership will be liable for any wrongful act or omission of any partner acting in the ordinary course of the partnership business. Section 178.10, STATS. It imposes joint and several liability on the general partners for everything chargeable to the partnership in the absence of contracts to the contrary. Section 178.12, STATS. In addition, § 178.09, STATS., **"Notice to or knowledge of partner charges partnership"** dictates:

> Notice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter, acquired while a partner or then present to the partner's mind, and the knowledge of any other partner who reasonably could and should have communicated it to the act-

ing partner, operate as notice to or knowledge of the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

Thus, the need to directly notify all partners is not as paramount as it would be in the absence of this type of provision under the total legislative scheme. Even with this expansive legislative approach to notice obligations, B&V's concern about due process is sufficiently addressed in the second sentence by insulating non-served partners and their personal assets from direct action.

Our examination of this portion of B&V's argument would not be complete without some comment about common sense. It is a "fundamental axiom of judicial construction . . . that it avoid any result that would be absurd or unreasonable under the facts and circumstances of the case." *J.A.L. v. State*, 162 Wis. 2d 940, 963, 471 N.W.2d 493, 502 (1991). Section 801.01(2), STATS.,[4] declares that statues regulating practice and procedure in our trial courts should be construed to "secure the just, speedy and inexpensive determination of every action. . . ." To accede to B&V's mandatory and peremptory approach of construing § 801.11(6), STATS., would make a mockery of the purpose for which the rules of construction exist. Under

---

[4] Section 801.01(2), STATS., provides:

**Kinds of proceedings; scope of chs. 801 to 847.**

. . . .

**(2)** SCOPE. Chapters 801 to 847 govern procedure and practice in circuit courts of this state in all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin. . . . Chapters 801 to 847 shall be construed to secure the just, speedy and inexpensive determination of every action and proceeding.

B&V's construction, the larger the aggregate of partners and far spread in location, the more insulated the partners and the partnership would be from answering in justice for acts of commission and omission. Rules of process are not designed to operate as instruments of obstruction, but are intended to provide the means to facilitate the just resolution of disputes.

To read the first sentence of the statute as a mandatory condition precedent to maintaining an action despite the protection provided individual unserved partners in the second sentence would render the legislature's scheme for partnership law meaningless. We thus conclude that contextual integrity, logic and common sense require that the first sentence of this statute be construed as directory only. Our conclusion is further supported by Wisconsin case law. *See Stangarone v. Jacobs*, 188 Wis. 20, 205 N.W. 318 (1925) (judgment allowed against served partner and partnership assets, but dismissed as to non-served partner).

*B. Due Diligence.*

B&V also asserts that CH2M was required to exercise due diligence to ascertain the names of the general partners and required to serve each one within sixty days after filing the summons and complaint. CH2M answers that the statute does not require that all known partners or those that could be known with reasonable diligence be served in order to acquire personal jurisdiction over the partners who actually are served and the partnership assets.

Section 801.11, STATS., delineates the manner of service of process that is required to exercise personal jurisdiction upon seven categories of defendants in civil actions. The statute relates to one subject but the

methodology to obtain service is not uniform. Service of process for natural persons, § 801.11(1)(b); for natural persons with disabilities, § 801.11(2); and for corporations and limited liability companies, § 801.11(5)(b), all require some form of due diligence. Whereas service upon the state, § 801.11(3); on other political corporations, § 801.11(4); on partners and partnerships, § 801.11(6); and on other unincorporated associations, § 801.11(7), have no express requirement for due diligence.

B&V reasons that the use of the word "known" implies a reasonable objective due diligence requirement to ascertain whether the identities of the general partners are available to a plaintiff suing a partnership. Although this argument has merit, we accord more persuasive value to the well-recognized intrinsic rule of construction adopted by our supreme court: "[W]here a statute, with reference to a subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." *Green Bay Broadcast Ins. Co. v. Redevelopment Auth.*, 116 Wis. 2d 1, 19, 342 N.W.2d 27, 36 (1983), *modified*, 119 Wis. 2d 251, 349 N.W.2d 478 (1984); 2B SINGER, *supra*, at § 51.02. The only conclusion that can be rationally made is that the legislature intended a different procedure to be used in the manner in which personal jurisdiction can be exercised over partnerships and its partners. Thus, the trial court did not err.

Even if, arguendo, a reasonable diligence requirement can be read into the statute, the record—contrary to B&V's contention—demonstrates that the trial court did consider the question and reached a positive result.

██

"Reasonable diligence" or due diligence is treated as a finding of fact to be affirmed unless clearly erroneous. *Welty v. Heggy*, 124 Wis. 2d 318, 324, 369 N.W.2d 763, 767 (Ct. App.), *cert. denied*, 474 U.S. 947 (1985). Where the basic facts are undisputed, the trial court's determination is considered a conclusion of law to be addressed independently by this court. *Cf. id.*

██

Here the basic facts of how CH2M effectuated service on twenty-eight of the known thirty-three general partners are not in dispute; the dispute involves each parties' different interpretation of those undisputed facts. Earlier in this opinion we set forth the pertinent facts leading up to the actual service of the known partners and, without repeating them, we incorporate them in addressing this reasonable diligence issue. To put the matter in a few words, B&V argues that CH2M did too little too late to obtain all the names and addresses of the general partners. On the other hand, CH2M contends that its reasonable efforts to seek admission of service for the partners through their legal counsel having been rejected, it did everything reasonable to effect service on known parties within the sixty-day deadline. In this regard, the record is somewhat sketchy, but our review reveals that the trial court did address the issue.

In its prefatory remarks prior to issuing its bench decision, the trial court indicated it had spent considerable time reviewing the record. This is evident from the trial court's recitation of the sequence of procedural events preceding CH2M's acts of service. From this review, the trial court concluded that CH2M "did not close their eyes to means of information reasonably

accessible to it."[5] From our earlier review of the same record, we reach the same conclusion.

*By the Court.*—Order affirmed.

FINE, J. (*concurring*). I agree with the majority that under RULE 801.11(6), STATS., service of a summons and complaint on some partners in a general partnership is sufficient to commence a civil action that will be binding on the partnership assets and on the partners who are served. I do not agree, however, that this result depends on whether the plaintiff has exercised due diligence to serve all of the partners. Accordingly, I do not join in the last half of part II.B. of the majority opinion, op. at 381-384.

---

[5] Accordingly, in substance, the trial court addressed and decided the issue even if it did not specifically state that it was doing so. *See Connecticut Gen. Life Ins. Co. v. DILHR*, 86 Wis. 2d 393, 404-05, 273 N.W.2d 206, 211 (1979) (substance controls over trial court's label).